[File No. 6011.]

RACHAEL WEISSER, Respondent, v. DANIEL PRESZLER, JR., Appellant.

(241 N. W. 505.)

Opinion filed February ·25, 1932.   Rehearing denied March 16, 1932.

*P. W. Lanier,* and *George W. Thorp,* for appellant.

*Knauf & Knauf,* for respondent.

NUESSLE, J. This action was begun by the plaintiff to charge the defendant under the provisions of chapter 5a of the Code of Criminal Procedure, §§ 10,500a1–10,500a37, both inclusive, 1925 Supplement (the Uniform Illegitimacy Act, chapter 165, Sess. Laws 1923), as the father of her child, born out of wedlock on March 3, 1930. The defendant answered to the plaintiff's complaint, interposing a general denial. The cause came to trial before a jury. The jury returned a verdict finding the defendant was the father of the child in question:

Judgment was entered pursuant to this verdict. Thereafter the defendant moved for a new trial. The motion was denied. This appeal is from the judgment and from the order denying the motion for a new trial.

The defendant has specified numerous errors on which he relies for a reversal. He contends that the evidence is insufficient to sustain the verdict. He complains on account of many rulings of the trial court touching the admission of evidence. He challenges certain of the instructions as given by the court.

With respect to the claim that the evidence is insufficient to sustain the verdict, it is enough to say that the question for determination was one of fact for the jury. Clearly the evidence of the plaintiff and her witnesses if believed is amply sufficient to sustain the verdict. Evidently the jury believed this testimony. The trial court refused to disturb the jury's findings. So this court cannot now overturn the verdict on the ground that the evidence was insufficient.

The defendant next complains on account of rulings of the trial court on questions of evidence. Most of these specifications are without merit. Some, however, require attention. One in our judgment is vital on this appeal and we will therefore consider it and set forth the reasons for the conclusion which we have reached respecting it.

The plaintiff's child was born on March 3, 1930. It was a normal full term child. The only medical evidence in the record with respect to that matter is that the period of gestation varies from 260 to 290 days. The plaintiff's testimony is to the effect that the child was begotten by the defendant on the night of May 22, 1929; that she had had no intercourse with any other man during the month of May or thereafter. The defendant denies that he had intercourse with the plaintiff on May 22 or at any other time. He admits that he was somewhat acquainted with her, but says that the only times he saw her during the spring and summer of 1929 were, first on April 5 when he took her home from a dance, and next in July when he saw her at another dance. In October, 1929, the plaintiff had occasion to visit the office of Mr. Chase, the state's attorney of Stutsman county. She then knew she was pregnant. On this visit to the state's attorney's office in October she had some conversation with him with reference to her condition. She was again

at his office and talked with him sometime in January and again in March, 1930. The state's attorney did not prosecute this action. The plaintiff retained private counsel to bring the action for her. At the trial of this case the state's attorney was called as a witness for the defendant and interrogated as to these conversations the plaintiff had had with respect to the paternity of her unborn child and the men with whom she had had intercourse. The record in that regard is as follows:

"Q. At the time she (plaintiff) was in your office, Mr. Chase, did you know she was with child?

"A. Yes, sir.

"Q. State whether or not at that time the investigation was for the purpose of ascertaining who the father of that child was?

"Mr. Knauf: That is objected to as incompetent, irrelevant and immaterial for any purpose.

"The Court: Overruled. Answer 'yes' or 'no'.

"A. Yes, sir.

"Q. Did you make investigation for the purpose of determining who her father was?

"Mr. Knauf: That is objected to as incompetent, irrelevant and immaterial.

"The Court: Overruled.

"Q. And did you interrogate Miss Weisser as to her condition?

"Mr. Knauf: That is objected to as incompetent, irrelevant and immaterial; no proper foundation laid for the introduction of such testimony.

"The Court: Overruled.

"A. She said that she didn't know.

"Q. Did she mention any names that were possible fathers of that child?

"A. Yes, sir.

"Q. Did she tell you that certain boys could have been, or not?

"Mr. Knauf: That is objected to as no proper foundation laid; improper impeaching testimony; incompetent, irrelevant and immaterial; and for the further reason the time and place is not stated.

"The Court: In this investigation, taking into consideration the entire situation, the Court will sustain the objection.

"Q. You state she told you certain boys that were possible fathers of the child in question. What did she say in regard to that?

"Mr. Knauf: Same objection.

"The Court: Overruled.

"A. On the 30th day of October, 1929, Miss Weisser was in my office; she said she was pregnant, and I asked her who was responsible for her condition, and I spent considerable time in going over with her the individuals with whom she claimed she had relations. She said she had sexual relations with Daniel Preszler once in November, 1928; that that was the one time she had been with him. She also said that during the spring and summer of 1929 she had sexual relations with John R., William B., and one W.; and she told me that from W. she contracted a venereal disease. She also told me she had had sexual relations with other men whose names were not known to her.

"Mr. Knauf: I now move the Court to strike the testimony of the witness from the record, upon the ground it is improper as to time and place not having been mentioned; improper for impeachment purposes; incompetent, irrelevant and immaterial; that as to the matter of disease, the statement of the public health authorities is the proper method of proof.

"The Court: The motion is allowed, and all testimony of the witness is stricken from the record except such testimony as to the parties the plaintiff claims were responsible for her condition. The witness knows the rule of the admissibility of this evidence as well as the Court."

The defendant insists that the ruling of the court, striking out the testimony of the witness Chase, was erroneous and prejudicial; that the issue was as to the paternity of the child; that the defendant was entitled to show that others than himself might have been the father of the child; that therefore this evidence of statements tending to establish that others than the defendant had had intercourse with the plaintiff at times when the child might have been begotten was relevant and competent; that accordingly the ruling was extremely prejudicial. On the other hand, the plaintiff insists that the ruling was correct; that the grounds urged in support of the motion to strike were good; that

the testimony of the witness as to statements of the plaintiff regarding intercourse with others than the defendant were indefinite as to both time and place; that it is not shown the alleged intercourse was had at such a time that it might have resulted in the plaintiff's pregnancy; that the testimony was not proper for impeachment purposes since no foundation had been laid through questions asked the plaintiff when she was on the stand.

It seems to us that the objection on account of uncertainty as to time and place was not good. Chase testified that the plaintiff stated that she had had intercourse with these several men mentioned during the spring and summer of 1929. Where these acts of intercourse took place was immaterial. Though the plaintiff's alleged statements were somewhat indefinite as to time, nevertheless if this intercourse was had during the late spring of 1929 it might have resulted in the conception of plaintiff's child. Considering the medical testimony, the earliest act of intercourse which could have resulted in the conception might have taken place on May 18; the latest act of intercourse on June 16. We think that the statement "spring and summer" sufficiently fixes the time of the acts within the period when the child might have been begotten to amount to an admission contrary to her present contention. Especially is this so in the light of the whole conversation in which the plaintiff purported to detail her relations with the particular men she then thought might be responsible for her pregnancy. Furthermore, in this conversation she stated that the defendant had had intercourse with her but once, and that act was in November, 1928. In cases of sexual promiscuity, it is not strange that the exact dates of the several acts of intercourse cannot be given. But since conception may result from any act within a considerable period, the exact date is immaterial where the question is as to the paternity of a child begotten during that period. Where a defendant charged with the paternity of a child seeks to show intercourse with others as an independent fact, it is sufficient if intercourse be proven at any time within the period when conception might have resulted from it. In this connection, see State v. McKnight, 7 N. D. 444; 75 N. W. 790.; State ex rel. Mundt v. Meier, 140 Iowa, 540, 118 N. W. 792. Accordingly we hold there was no ground for the objection on account of uncertainty as to time and place which

warranted the court in sustaining the objection or in striking the evidence from the record. The point is made that the effect of the ruling which is challenged was not to strike the testimony concerning statements made by the plaintiff as to acts of intercourse with the several parties mentioned; that all that was stricken was the testimony with respect to other matters than the acts of intercourse she had had with these several individuals. Reference to the record, however, discloses that unless the effect of the ruling was to strike from the record all testimony with respect to the several parties other than Preszler, it was wholly futile. There was nothing else to strike. The plaintiff's claim asserted at the trial was that Preszler was the father of the child and not that one of these other individuals might be. When the court ruled that all of the testimony of the witness Chase be stricken excepting "such testimony as to the parties that plaintiff claims were responsible for her condition," the jury could take no other meaning than that all of the testimony excepting as to Preszler was stricken and removed from their consideration. If so we cannot say that the ruling was other than prejudicial to the defendant.

The defendant also predicates error on account of rulings of the court touching evidence sought to be elicited from the witness Spanton. Spanton was the sheriff of Stutsman county. The plaintiff was in his custody for some time in October, 1929. She then had some conversation with him about her condition and apparently (there is no offer of proof) related to him substantially the same account she had related to the state's attorney above referred to. The sheriff was interrogated concerning this conversation but was not permitted, the plaintiff objecting, to answer. The objections interposed were similar to those made when the state's attorney was being examined.

The pertinent question here is as to the paternity of the child. The plaintiff on the trial testified that she had had no intercourse with any other man than the defendant Preszler during the time when the child might have been begotten. Her prior statement to Chase contrary to this testimony or any other evidence which tended to establish the contrary, was relevant to the issue then being tried, and if relevant such evidence was admissible unless counter to some rule of competency. See State v. Heaton, 56 N. D. 357, 217 N. W. 531. The only possible

rule that could be invoked in this behalf would be the hearsay rule. But that rule has no application here. Any statement made out of court by a party to a litigation which is inconsistent with the facts asserted by that party in his pleadings or in his testimony, constitutes an admission and may be used in evidence against him by his adversary. See, 2 Wigmore, Ev. 2d Ed. §§ 1048, et seq. Accordingly the statements as to acts of intercourse during the period when conception might have taken place to which the witness Chase testified, were admissions that should have been received in evidence against the plaintiff. Though the evidence was then inadmissible for impeachment purposes, that fact did not justify the court's action in striking it from the record. The evidence was offered as an admission by a party to the action, the plaintiff. It was not offered for impeachment purposes, though incidentally it might have had that effect. Therefore, no foundation was required to be laid for its admission, such as would have been necessary had it been offered solely by way of impeachment. See O'Neil v. Redfield, 158 Iowa, 246, 139 N. W. 555; Castner v. Chicago, B. & Q. R. Co. 126 Iowa, 581, 102 N. W. 499; Bartlett v. Wilbur, 53 Md. 485; McManus v. Nichols-Chisholm Lumber Co. 105 Minn. 144, 117 N. W. 223. The rulings were erroneous and prejudicial.

There is some intimation in the respondent's brief, though no argument is made and no authorities were cited in that behalf, that the conversation between the plaintiff and the witness Chase was a confidential communication under § 7923, Comp. Laws 1913, providing:

"1. An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of his professional employment. . . ." Whether this conversation between Chase and the plaintiff was confidential and privileged under this statute and its companion statute, § 7924, Comp. Laws 1913, we are not called upon to determine here. No objection was based on this ground. Even if the communication was privileged, the privilege was personal to the plaintiff. 5 Wigmore, Ev. 2d ed. § 2321. It could be waived by her. Id. § 2327. So the objection not being predicated upon this ground the privilege must be considered as having been waived.

We need not consider the other points made by the defendant since

regardless of their merits there must be a reversal because of the error above pointed out.

Judgment reversed and new trial ordered.

BIRDZELL and BURKE, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). I agree with my associates that in an action to establish the paternity of an illegitimate child the defendant may introduce evidence tending to show that some one other than he is, or may be, the father of such child; and that consequently statements made by the prosecutrix to the effect that she had had sexual intercourse with men other than the defendant within a period of time when the child might have been conceived are admissible as admissions against the prosecutrix. But, when evidence of such admissions is offered, the admissions must themselves be within the rule which permits the defendant to adduce evidence of acts of intercourse by the prosecutrix with other men. The rule, as well as its limitations, is stated in Corpus Juris thus:

"Not for the purpose of impeaching the character of prosecutrix, but as tending to show that some other person than the accused may have begotten the child, evidence of acts of intercourse with others than defendant at a time when in the course of nature the child could have been begotten is admissible, at least when coupled with evidence that defendant had no connection with her during the probable time. *Such evidence must, however, be confined to that period, and acts of intercourse at other times may not be shown, unless the offer is coupled with proof either of the premature birth of the child, or of an unusual prolongation of the period of gestation.*" 7 C. J. pp. 990, 991.

As I construe the record in this case the trial court recognized, and ruled in harmony with, this rule. He did not exclude evidence tending to show that the prosecutrix had made admissions that she had had sexual intercourse with men other than the defendant at such times as to make it probable or possible that one of such other men was the father of the child in question here. It will be noted that in ruling on the motion to strike the testimony of the witness Chase (set forth in the majority opinion) the court said: "All of the testimony of the

witness is stricken from the record *except such testimony as to the parties the plaintiff claims were responsible for her condition.*"

The court's remarks were directed at the testimony on which the ruling was sought; and it seems to me that the only reasonable construction to be placed upon the court's statement is that he left standing in record as evidence for the jury's consideration the testimony which the witness Chase had given as regards statements which he claimed the prosecutrix had made to him mentioning certain men as possibly being responsible for her pregnancy.

As regards the testimony sought to be elicited from the witness, Spanton, the record discloses that the first question asked this witness regarding alleged statements by the prosecutrix was as follows: "Q. On the trip back was there any question with regard to her condition?" In sustaining an objection to this question, which was interposed by plaintiff's counsel, the trial court said: "In order for counsel to introduce such evidence he must bring the testimony within the reasonable period of gestation." This holding of the trial court is strictly in accord with the rule in Corpus Juris, quoted above. The questions directed to the witness Spanton were not restricted to a period of time during which in the course of nature the child might have been begotten. They referred generally to "the spring of 1929." Under the questions propounded the witness might have testified as to statements made by the plaintiff regarding alleged acts of intercourse with men other than the defendant,—not a single one of which could possibly have resulted in begetting the child in question here. In view of the clear announcement of the views of the trial court indicating that the defendant might introduce evidence of statements made by the prosecutrix concerning acts of intercourse with men other than the defendant at a time which might have resulted in begetting the child, I fail to see how the defendant could have been prejudiced by the rulings of the trial court. Under the rule announced by the trial court, defendant's counsel might, by appropriate questions, have elicited any testimony that the defendant was entitled to introduce as regards admissions by the prosecutrix as to acts of intercourse with men other than the defendant which could or might have resulted in her pregnancy.

I am authorized to say that Mr. Justice Burr concurs in the views expressed in this dissent.

BURR, J., concurs in dissent.